MAHONEY, APPELLANT, *v.* DIXON ET AL., RESPONDENTS.

(No. 2,295.)

(Submitted October 9, 1906.  Decided November 5, 1906.)

*Notaries—False  Certificate—Evidence—Instructions—Reading Law to Jury—Failure of Proof.*

Notaries—False  Certificate—Evidence—Cross-examination.

1.  In an action against a notary and the sureties on his official bond, for falsely certifying an acknowledgment to a mortgage on the security of which plaintiff had advanced money, plaintiff was asked on direct examination whether he had any interest in the note and mortgage, both of which ran to another person.  Plaintiff answered in the affirmative.  On cross-examination he was asked why the mortgage had been made to such other person.  An objection was overruled and the witness replied that it was done to avoid his having to pay taxes on the mortgage.  *Held,* that the evidence was proper cross-examination, and admissible for the purpose of affecting the credibility of the witness.

Same.

2.  On direct examination plaintiff, in an action against a notary and the sureties on his official bond for damages consequent upon a false certification of an acknowledgment to a mortgage, was asked to state what, if any, efforts he had made with a view to recover the amount of money he had advanced on the mortgage.  He replied that he had endeavored to secure it from one R., who had introduced the mortgagor to the notary, and failing in this he had approached the notary with a like demand.  On cross-examination he was asked whether R. or his partner had made any offers of settlement.  An objection having been overruled, he replied that he could not recollect that any efforts [offers] were made.  *Held,* that the question was proper cross-examination, and that in any event no prejudice could have resulted from the answer.

Same—Instructions—Naming Witnesses—When not Reversible Error.

3.  In an action against a notary for damages for falsely certifying to an acknowledgment of a mortgage, the testimony taken at a former

trial of the cause was introduced to impeach plaintiff and his wife. Their statements on the second trial in certain respects were in direct conflict with those made at the first trial. The only other witness at the second hearing who had also testified at the first admitted the correctness of his former testimony and gave none contrary thereto. The court instructed the jury that in determining the weight to be given to the testimony of plaintiff and his wife they could consider their statements made at the first trial, if they should find that such prior testimony had been given. *Held,* that while a court should not in any case designate a witness by name in its instructions, in this instance prejudice to appellant (plaintiff) could not have been worked, because, even if the witnesses had not been particularly designated, the instruction could not have been understood as being applicable to anyone but plaintiff and his wife.

Attorneys—Argument to Jury—Reading Law. -

4.  *Semble:* Whether an attorney in an argument to the jury may read excerpts from an opinion rendered by the supreme court on an appeal of a civil cause then on trial for the second time, seems to rest in the sound discretion of the court, and its action in permitting it to be done is not reversible error so long as the portions read do not state or comment on the facts, or disclose what the result of the first trial or the appeal had been.

Notaries—False Certificate—Attorneys—Argument—Reading Law to Jury.

5.  Where, in an action against a notary for damages flowing from a false certificate to an acknowledgment of a mortgage, it was contended by defendants that plaintiff's testimony as to the reliance he had placed on the certificate before he loaned his money was in direct conflict with his statements made on a former trial of the cause, and counsel for defendants in his argument read to the jury a portion of the opinion of the supreme court rendered in the same case on appeal, to the effect that if plaintiff had not relied on the correctness of the certificate he could not recover,—with the apparent purpose of illustrating to the jury why it had become necessary for plaintiff to change his testimony in this respect,—the court did not abuse the discretion lodged in it in permitting the reading of the excerpt in question.

Same—Appeal—Verdict Against Evidence—Failure of Proof.

6.  The verdict for defendants in an action against a notary on his official bond for falsely certifying to an acknowledgment of a mortgage was not open to the objection that it was not justified by the evidence, where the only testimony of the transaction on the part of plaintiff was that of himself and wife, which was contradictory of their respective stories given at a former tria. of the cause, a fact which the jury were at liberty to take into consideration on the question of their credibility; and if their testimony on the second trial was disregarded, there was an entire failure of proof, and the verdict for defendants was proper.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Edward L. Mahoney against John M. Dixon and others. From a judgment in favor of defendants and from an order denying him a new trial, plaintiff appeals. Affirmed.

*Mr. John J. McHatton,* for Appellant.

The court was not justified in allowing counsel to refer to the opinion of this court on the former appeal, or to read excerpts therefrom. There is no warrant in our practice for the same. Under our statute and under our practice only such matters as have been admitted in evidence before a jury are proper matters for discussion by counsel. The reading amounted to introducing the portion of the opinion read as testimony in the case. An opinion of the supreme court is not its decision, and is not even admissible in evidence to prove the decision. (*Appeal of Buckingham,* 60 Conn. 142, 22 Atl. 511; *Robinson* v. *New York etc. R. Co.,* 64 Hun, 41, 18 N. Y. Supp. 728.) Counsel had no right to read the opinion to the jury. (*Appeal of Baldwin,* 44 Conn. 37; *Douglass* v. *Boynton,* 59 Ga. 283; *Hudson* v. *Hudson* (Ga.), 16 S. E. 349; *Onley* v. *Boston Elec. Ry. Co.* (N. H.), 59 Atl. 387; *Ray* v. *Chesapeake Ry. Co* (W. Va.), 50 S. E. 413; *Tuller* v. *Talbot,* 23 Ill. 357, 76 Am. Dec. 695; *City of Chicago* v. *McGivern,* 78 Ill. 347; *Johnson* v. *Culver* (Ind.), 19 N. E. 129; *Steffenson* v. *Chicago etc. Ry. Co.* (Minn.), 51 N. W. 610; *Geo. Knapp & Co.* v. *Campbell* (Tex.), 36 S. W. 765; *Muller* v. *Reinig* (Wis.), 39 N. W. 861; *Filley* v. *Christopher* (Wash.), 80 Pac. 834; *Good* v. *Mylin,* 13 Pa. St. 539; *Phoenix Ins. Co.* v. *Allen,* 11 Mich. 512; *State* v. *Whit,* 5 Jones (N. C.), 224, 72 Am. Dec. 533.)

The reference of counsel for plaintiff to the opinion is not correctly stated; but if so, it does not cure the error any more than a cross-examination cures an erroneous admission of evidence. The conduct of counsel and the language expressed in connection with the above matter and the argument to the jury were such as to entitle the plaintiff to a new trial. (*Lawlor* v. *Kemper,* 20 Mont. 13; Hayne on New Trial and Appeal, p. 154 et seq., sec. 50; *Lindsay* v. *Pettigrew* (S. Dak.), 52 N. W. 873; *Cleveland Paper Co.* v. *Banks* (Neb.), 16 N. W. 833; *Henry* v. *Sioux City Ry. Co.* (Iowa), 30 N. W. 630, notes; Rice on Evidence, 129; *Waldron* v. *Waldron,* 156 U. S. 361; *People* v. *Fielding,* 158 N. Y. 542, 46 L. R. A. 641.)

The transcript of the proceedings on the former trial was not admissible in evidence. (*People* v. *Considine,* 105 Mich. 149, 63 N. W. 196; *State* v. *Cooper,* 83 Mo. 698; *State* v. *Adams,* 78 Iowa, 292, 43 N. W. 194. See, also, Chase's Stephens' Digest of Evidence, 328, note; *Stayner* v. *Joyce,* 120 Ind. 99, 22 N. E. 89; Jones on Evidence, sec. 346, note 10; Rice on Evidence, 399; *Pennsylvania Co.* v. *Marien,* 123 Ind. 415, 7 L. R. A. 687; *Stearn* v. *People,* 102 Ill. 540.) The latter cases go to the point that a bill of exceptions, containing the testimony of a witness given on a former trial, is not competent to impeach him.

Any instruction which calls particular attention to any witness, or any part of the testimony, invades the province of the jury. (*State* v. *Irwin* (Idaho), 71 Pac. 608, 60 L. R. A. 716; *Knowles* v. *Nixon,* 17 Mont. 473; *Wastl* v. *Montana Union Ry. Co.,* 17 Mont. 216; *Hamilton* v. *Great Falls Ry. Co.,* 17 Mont. 343, 344; *State* v. *Schneppel,* 23 Mont. 526.)

*Mr. Charles R. Leonard, Mr. William M. Bickford,* and *Mr. Lewis P. Forestell,* for Respondents.

"It is proper to read that part of the opinion rendered on a previous appeal laying down the law applicable to the case, care being taken not to state the result of the former trial." (1 Blashfield's Instructions to Juries, sec. 166; *Power* v. *Harlow,* 57 Mich. 107, 23 N. W. 606; *Panama Ry. Co.* v. *Johnson,* 63 Hun, (N. Y.), 629, 17 N. Y. Supp. 777.) The decision of the supreme court upon questions directly involved and considered upon a former appeal is the law of the case. (*Finlen* v. *Heinz,* 32 Mont. 354, 366, 80 Pac. 919; *Mahoney* v. *Butte Hdw. Co.,* 27 Mont. 463, 71 Pac. 674; *Murray* v. *Polglase,* 23 Mont. 401, 59 Pac. 439. See, also, *People* v. *Anderson,* 44 Cal. 70; *Gallagher* v. *Town of Buckley,* 31 Wash. 380, 72 Pac. 79; *Western Union Tel. Co.* v. *Wingate,* 6 Tex. Civ. App. 394, 25 S. W. 439; *Baltimore etc. Ry. Co.* v. *Kean,* 65 Md. 394, 5 Atl. 325; *Stratton* v. *Dole,* 45 Neb. 472, 63 N. W. 875; *Boltz* v. *Town of Sullivan,* 101 Wis. 608, 77 N. W. 870; *Allaire* v. *Allaire,* 39 N. J. L. 113, 114; 2 Ency. of Pl. & Pr. 709, and cases cited; Abbott's Trial Brief, Civil Jury Trials,

2d ed., p. 402, and cases cited. As to the latitude allowed counsel in his argument, see *Tucker* v. *Henniker,* 41 N. H. 323; *Gilberson* v. *Miller M. & S. Co.,* 4 Utah, 46, 5 Pac. 699; *Gregory's Admx.* v. *Ohio River Ry. Co.,* 37 W. Va. 606, 16 S. E. 819; *Hastings* v. *Northern Pac. R. R. Co.,* 53 Fed. 224.)

A transcript of the testimony on a former trial may be introduced, although not certified to, when the stenographer testifies that he took the notes in shorthand and transcribed them and that the transcript is correct. (*People* v. *Morine,* 61 Cal. 367, 372, 373; *Jones* v. *Ward,* 3 Jones, 24, 64 Am. Dec. 590; *Klepsch* v. *Donald,* 8 Wash. 162, 35 Pac. 621; *Chicago R. I. & P. Ry. Co.* v. *Harmon,* 16 Ill. App. 31, 17 Ill. App. 640. See, also, *Fitzpatrick* v. *Fitzpatrick,* 6 R. I. 64, 75 Am. Dec. 681; *Wright* v. *Wright,* 58 Kan. 525, 50 Pac. 444, 445; *Acklen* v. *Hickman,* 63 Ala. 494, 35 Am. Rep. 54. See, also, 26 Am. & Eng. Ency. of Law, 2d ed., 781, and cases cited, note 7; Jones on Evidence, 346; and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This cause was heretofore before this court, and a sufficient statement of the case will be found preceding the opinion. (*Mahoney* v. *Dixon,* 31 Mont. 107, 77 Pac. 519.) Upon the new trial the jury returned a verdict in favor of the defendants and judgment was entered accordingly. From that judgment and order denying him a new trial the plaintiff appeals.

The assignments of error which need be considered are: (1) Errors in the admission of evidence; (2) the giving of instruction No. 12; (3) misconduct of counsel; and (4) insufficiency of the evidence to justify the verdict.

1. On the direct examination of plaintiff his counsel made this observation: "I observe that this note and mortgage were made to George H. Cotter"; and then asked this question: "You may state whether or not you had any interest in the note and mortgage?" to which the plaintiff replied: "Yes, sir, I had. The money was mine, and I had it made out that way for

my use and benefit." On cross-examination he was asked to state why Cotter was named as mortgagee. Objection was made to this question, but the objection was overruled, and the witness answered: "In order that I would not have any taxes to pay on it." Counsel for plaintiff moved that the answer be stricken out, but the motion was overruled. We think the evidence was admissible as proper cross-examination (Code Civ. Proc., sec. 3376), and for the purpose of affecting the credibility of the witness. (Section 3144.)

On direct examination the plaintiff was asked to state what, if any, investigation he made with a view to recovering his money. He answered that he had Reek brought back for the purpose of seeing whether he could get his money out of Reek, but found he could not, and then saw Dixon and told Dixon he would look to him for it. On cross-examination plaintiff was asked whether any offers had been made to him by Reek or Reek & Churchill or in their behlf. This was objected to as not cross-examination, but the objection was overruled, and the witness answered: "I do not recollect that there were any efforts [offers] made." There was no error in the court's ruling. It was proper cross-examination, and, if it had not been, the answer discloses that no prejudice resulted.

2. Instruction No. 12 given by the court is as follows: "Instruction No. 12. You are instructed that in determining the weight to be given to the testimony of the plaintiff and of Mrs. Mahoney, you can consider the testimony given by them in the former trial of this case, which has been produced in evidence in this cause, if you find such prior testimony has been given, and in that connection you have a right to compare the testimony given on the former trial, as established in this cause, with the evidence which was given in this hearing, for the purpose of determining the weight to be given to the testimony of such witnesses."

The objection made to this instruction is that it singles out by name certain witnesses, and makes the rule of law announced applicable to them only. It is a general rule that: "Where

there are several witnesses testifying to a particular hypothesis of fact, it is error for the court, in instructing the jury, to single out a particular witness, and direct their attention to his testimony, either in the way of disparagement, as where the court gives in respect of a particular witness the familiar direction explaining the maxim, '*Falsus in uno, falsus in omnibus,*' or where, by singling out the testimony of a witness, the tendency of the instruction is to leave the jury to attach undue importance to it.'' (*Hartman* v. *Louisville etc. Ry. Co.,* 39 Mo. App. 88.) This is in effect the decision of this court in *Wastl* v. *Montana U. Ry. Co.,* 17 Mont. 213, 42 Pac. 772.

But if the witnesses so designated are the only ones to whom the rule could possibly be applicable, it is quite generally held that the giving of such an instruction will not constitute reversible error. (*Shaw* v. *State,* 102 Ga. 660, 29 S. E. 477; *Dyas* v. *Southern Pac. Co.,* 140 Cal. 296, 73 Pac. 972.) With respect to this, the Missouri court above further said: ''Mr. Sample was the only witness for the defendant who testified to the existence of the special direction or to its terms. It was from his lips alone that the language of the direction, as he recollected it, was delivered. The language in which the instruction was drawn, then, in so far as it alluded to the 'directions such as witness Sample testified to,' was merely a method of identifying that element of the defendant's evidence. The instruction had no tendency to disparage the testimony of that witness.'' (*Hartmann* v. *Louisville etc. Ry. Co.,* above.) And it was held to be reversible error for the trial court in that case to refuse the instruction mentioned, although the witness Sample was therein designated by name. In *Bunce* v. *McMahon,* 6 Wyo. 24, 42 Pac. 23, the court seemed to be of the opinion that such an objection to an instruction is not tenable in any event.

We are not now prepared to go further than to say that we deem it bad practice in any case for a court in its instructions to designate a witness by name; and, if the case presented comes within the general rule announced above, the error will be deemed sufficient to work a reversal. But, in this instance, the

plaintiff and Mrs. Mahoney were the only witnesses to whom the rule could in any event be made applicable. Confessedly, there was a direct conflict between the testimony given by each of these witnesses on the second trial and what the defendants claimed was their testimony given on the first trial. It was properly left to the jury to determine whether in fact these witnesses had testified upon the first trial, as the defendants contended they had.

The evident purpose of introducing what the defendants claimed was the testimony given at the first trial by these witnesses was to impeach them, by showing that they had made statements on the first trial contradictory of their testimony on the second trial. (Code Civ. Proc., sec. 3380.) No other witness at the second trial testified at the first trial, except the witness Leonard, and the record fails to disclose any attempt whatever to impeach him. In fact, there was not any material portion of his testimony given at the first trial called to his attention on the second trial, and in every instance where it was done, he admitted the correctness of his former testimony and did not testify to anything on the second trial contrary thereto. So that, if the court had properly drawn this instruction, omitting the names of the witnesses, and making it general in its application, the jury could not have understood the instruction as applicable to anyone but the plaintiff and Mrs. Mahoney. Under these circumstances we think the giving of this instruction did not work any prejudice to the appellant. (*Hamilton* v. *Great Falls St. Ry. Co.*, 17 Mont. 334, 42 Pac. 860.) In *State* v. *Schnepel*, 23 Mont. 523, 59 Pac. 927, and in *State* v. *Jones*, 32 Mont. 442, 80 Pac. 1095, it was held not to be error for the trial court to refuse an instruction in which a witness was designated by name.

3. In the course of his argument to the jury one of the attorneys for the defendants read a portion of the opinion of this court in this same case on appeal, as follows: "If, in fact, the plaintiff did not rely upon the statements contained in the notary's certificate, then the mere fact of the notary's violation of

his official duty could not have been the proximate cause of plaintiff's injury. It was necessary for the plaintiff to allege, as he did, that he did rely upon such certificate, but this allegation is put in issue by the answer. It was therefore necessary to be supported by the proof, and considered and passed upon by the jury."

The right of plaintiff to recover depended upon his having relied upon the certificate of the notary in making the loan. Defendants contended upon this trial that upon the first trial Mahoney had testified that he did not see the mortgage until after the money was paid over to Reek on January 11th, and that Mrs. Mahoney had given somewhat similar testimony. Upon the second trial, Mahoney testified that Reek brought the mortgage, duly executed with Dixon's certificate attached, to his (Mahoney's) residence on the evening of January 10th, and that he read the mortgage and the notary's certificate thereto, and, relying upon such certificate, he made the loan. Mrs. Mahoney, on the second trial, testified that Reek brought the mortgage to their residence on the evening of January 10th, and that she saw her husband read it at that time, and that he and Reek were talking about it in her presence.

Upon the second trial the court gave instructions 8, 9, and 10, embodying the law as declared by this court in the excerpt from its opinion above, and, in his argument, counsel might better have confined his attention to the instructions so given; but, so long as the portion of the opinion read does not state or comment on the facts, or disclose what the result of the first trial or the appeal was, we are not prepared to say that the trial court abused its discretion in refusing to prohibit the reading of the excerpt quoted.

While there is some diversity of opinion on the subject, the rule seems to be stated correctly as follows: "Some authorities hold it error to permit counsel to read law to the jury in civil cases, while the great majority hold it not necessarily reversible error, but within the sound discretion of the court, to be reviewed only in cases of abuse. Where the latter doctrine pre-

vails, if the law is correctly laid down in the decision or book used by counsel, it does not constitute ground of exception, although such practice is not to be encouraged. But if the reading from a decision was to bring before the jury the facts of the case decided, or the amount of the verdict, or the comments of the judge on the facts, to influence the jury in deciding upon the facts in the case on trial or in fixing the amount of damages, it is generally pronounced to be clearly erroneous.'' (2 Ency. of Pl. & Pr. pp. 709, 710.) If any distinction whatever is to be made, it would seem that a stricter rule would be observed in criminal than in civil cases. But in *Territory* v. *Hart*, 7 Mont. 42, 14 Pac. 768, this court said: ''Perhaps the correct rule is laid down by English, C. J., in an Arkansas case, as follows: 'The court may, in its discretion, permit counsel to read law to the jury in a criminal case, but it is its province to determine whether the law proposed to be read is applicable to the facts of the case. The matter of reading law to the jury, as part of the argument, is under the discretion and control of the court, and its rulings in the matter are not subject to review, unless its discretion is abused to the prejudice of the accused.' (*Curtis* v. *State*, 36 Ark. 292.) ''

It is apparent that the purpose of counsel was to illustrate his argument and to account for what he contended was the direct contradiction in the testimony of the plaintiff and Mrs. Mahoney, as given upon the first and the second trials, by showing that, according to the law of the case as declared by this court, and by the trial court in instructions 8, 9, and 10, the plaintiff could not possibly prevail if his former testimony, as defendants claimed it was given, was true, and therefore it became necessary for him to change his story in order to prove one of the material allegations of his complaint, viz.: ''That he relied upon the statements contained in the certificate of said notary public.'' Counsel appears to have kept within the rule recognized by the authorities. (*Gilberson* v. *Miller M. & S. Co.*, 4 Utah, 46, 5 Pac. 699.)

4. Insufficiency of evidence. The theory of counsel for appellant seems to be that, as the only testimony as to the transaction between plaintiff and Reek was that given by plaintiff, to the effect that the plaintiff saw· the executed mortgage with the notary's certificate attached before he parted with his money, and that he made the loan relying on the notary's certificate, and the corroboration of this, so far as it is corroborated by the testimony of Mrs. Mahoney, therefore the verdict in favor of the defendants is not supported by the evidence. But the credibility of the plaintiff and Mrs. Mahoney was a question for the jury; and, if the jury believed that upon the first trial each of these witnesses had sworn to material facts contradictory of their respective stories told upon the second trial, then the jury were at liberty to disregard their testimony given upon the second trial, for there were not any corroborating facts or circumstances; and if their testimony given at the second trial be disregarded by the jury,—as it evidently was,—there was an entire failure of proof, and the verdict for the defendants follows as a matter of course.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.